UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VENKATESH THIAGARAJAN,<br><br>   *Plaintiff*,<br><br> v.<br><br>MARK KOUMANS,[1] Acting Director,<br>United States Citizenship and Immigration<br>Services.<br><br>   *Defendant.* | Civil Action No. 19-cv-1116 (RDM) |

## MEMORANDUM OPINION

Plaintiff Venkatesh Thiagarajan, a citizen of India, brings this suit under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, challenging the United States Citizenship and Immigration Services' ("USCIS") decision to deny his application for an adjustment of his immigration status in order to become a lawful permanent resident of the United States. Dkt. 1. USCIS denied that application and Plaintiff's motion for reconsideration of that denial on the ground that he had failed to show, as is required by statute, 8 U.S.C. § 1255(a)(3), that an immigrant visa was immediately available to him. Rather, according the USCIS, the evidence showed that both he and his wife were born in India, and thus his visa was chargeable to India—and no visa for an Indian national was available to him at that time. CAR 105–07 (denial of original application); CAR 48–50 (denial of first motion for reconsideration).

---

[1] Acting Director Koumans was automatically substituted for Francis Cissna as the Defendant pursuant to Fed. R. Civ. P. 25(d). Because the office of Director is currently vacant, no further substitution is available.

Plaintiff challenges those denials as arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A). He contends that a visa was immediately available to him via his wife because, he contends, she falls under a narrow regulatory exception for individuals who are born in in foreign state to parents who were not born in that foreign state and who were stationed there for work at the time of the individual's birth. 22 C.F.R. § 42.12(e); *see also* 8 U.S.C. § 1152(b) (permitting an applicant to charge his or her visa to the country to which his or her spouse's visa would be charged). The parties have cross-moved for summary judgment on this question and, for the following reasons, the Court will **GRANT** Defendant's motion for summary judgment, Dkt. 11, and will **DENY** Plaintiff's motion for summary judgment, Dkt. 10.

## I. BACKGROUND

**A.     Statutory Background**

Plaintiff was sponsored by his employer, Cognizant Technology Solutions US Corporation ("Cognizant"), for a green card. CAR 444–57. That process consists of three steps. First, the employer must apply for and receive a certification from the Department of Labor that there are no qualified, able, and willing U.S. workers to fill the job opportunity that the company is offering to the alien worker. *See* 8 U.S.C. § 1182(a)(5). Second, the employer must file with USCIS the approved labor certification along with an I-140 petition, which requires the employer to demonstrate that the prospective immigrant visa-holder meets the job requirements contained in the labor certification and that the company can afford to pay the worker the specified wage. 8 U.S.C. § 1154(a)(1)(F); *see also* 8 C.F.R. § 204.5(a).

Finally, the applicant himself must apply for and be granted an adjustment of status to permanent resident. 8 U.S.C. § 1255(a). Adjustment of status is a form of discretionary relief for which an individual is eligible only if: (1) he "makes an application for such adjustment;" (2)

he "is eligible to receive an immigrant visa and is admissible to the United States for permanent residence;" and (3) "an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a).  The total number of employment-based immigrant visas that may be issued during a given year is capped by the Immigration and Nationality Act ("INA").  8 U.S.C. § 1151(d).  The INA further specifies that no more than 7% of any particular visa type may be issued to "natives of any single foreign state" in a given year.  8 U.S.C. § 1152(a)(2).  These caps have the combined effect of creating long wait times for nationals of certain countries.  *See Feng Wang v. Pompeo*, 354 F. Supp. 3d 13, 18–19 (COURT & YEAR) (describing similar backlog for Chinese immigrants seeking investment-based visas); *see also* Retention of EB-1, EB-2, and EB-3 Immigrant Workers and Program Improvements Affecting High Skilled Workers, 81 Fed. Reg. 82,398, 82,409 (Nov. 18, 2016) (describing the outsized effect of these caps on Chinese and Indian nationals due to excess demand for immigrant visas).

      The general rule is that an immigrant visa will be "charged" to the foreign state in which the applicant was born.  8 U.S.C. § 1152(b).  Under the "cross-chargeability rule," however, an individual's visa may also be charged to his or her spouse's foreign state of birth if failure to do so would result in separation of the couple.  *See* 8 U.S.C. § 1152(b).  The State Department has, however, by regulation provided for several clarifications to the rule charging visas to foreign states based on place of birth.  The clarification relevant here permits individuals "born in a foreign state . . . in which neither parent was born, and in which neither parent had a residence at the time of the applicant's birth," to charge their visa "to the foreign state of either parent." 22 C.F.R. § 42.12(e).  Parents of an individual "are not considered as having acquired a residence . . . if, at the time of the [individual's] birth within the foreign state, the parents were visiting temporarily or were stationed there in connection with the business or profession and under [the]

3

orders or instructions of an employer, principal, or superior authority foreign to such foreign state." *Id.*

**B.     Factual Background**

Plaintiff has been working in the United States for Cognizant since at least 2011, when Cognizant first sponsored Plaintiff for an employment-based immigrant visa.[2] CAR 444–57. USCIS approved that application on August 9, 2011, which granted Plaintiff a priority date for his visa-eligibility of March 21, 2011. CAR 435. On April 20, 2017, Plaintiff applied to adjust his immigration status to that of a permanent resident. CAR 148–269.

In that application, Plaintiff asserted that a visa was immediately available to him because his visa should, through his wife, be charged to France, rather than India, due to his wife's and her family's French citizenship. CAR 165–69. In support of that assertion, he submitted his wife's "Certificate of French Nationality" and a translated copy thereof. CAR 238–45. Although Plaintiff's wife, like Plaintiff, was born in India, her family is from Pondicherry (also spelled "Puducherry" in portions of the administrative record), a region of modern-day India that was under French colonial rule until it was ceded to India by treaty in 1956, CAR 58, and thus Plaintiff's wife has French citizenship through her parents, *see* CAR 60.

On March 18, 2018, USCIS requested a copy of Plaintiff's birth certificate and additional evidence that he was still employed by Cognizant. CAR 113–15. Plaintiff submitted evidence of his employment as well as a translation of his birth certificate and a document purporting to be a translation of a copy of his wife's birth certificate. CAR 137–38.

---

[2] On February 11, 2019, Cognizant informed USCIS that Plaintiff's employment with the company had ended and sought to withdraw the I-140 petition it had filed on Plaintiff's behalf. CAR 3. As this request was received more than 180 days after the petition was approved, USCIS maintained that the petition would remain approved unless later revoked on other grounds. CAR 1–2.

On July 9, 2018, USCIS denied Plaintiff's application on the ground that no visa was available to him. CAR 105. USCIS explained that, although Plaintiff "indicate[d] a visa should not be charged to [his] country of birth because [he] claimed [his wife] is a French citizen born in French India," CAR 106, Plaintiff "submitted evidence showing that [his] wife and her parents were born in India and [that] her parents were residing in India at the time of her birth," CAR 107. Thus, USCIS found that he was "ineligible to utilize the rules of alternate chargeability such that [he] might be charged to France, rather than [India]." *Id.*

On August 2, 2018, Plaintiff filed a motion to reopen and/or reconsider. CAR 51–103. In support of that motion, Plaintiff argued that USCIS had misapplied 22 C.F.R. § 42.12(e) in his case because his wife's parents are French citizens and were in India for her father's work and were therefore not residents of India. *See* CAR 100–01. In support of that argument, he filed a copy of his wife's French passport, CAR 60, a certificate of his father-in-law's employment at a public middle school in Pondicherry, and original and translated copies of a "Family Book" detailing the birth dates and locations of his wife's family members dating back to her grandparents in 1924, CAR 80–85.

On August 20, 2018, USCIS denied the motion to reopen and/or reconsider. CAR 48–50. USCIS explained that the record "failed to establish that neither of [Plaintiff's] wife's parents were born in India." CAR 50. Rather, the evidence showed that Plaintiff's "wife's mother was born in 1966, after India re-gained control of Pondicherry." *Id.* "[I]n the alternative," the decision continued, Plaintiff had failed to show that he "me[t] the exceptions outlined in 22 C.F.R. § 42.12." *Id.* Specifically, Plaintiff had "not submitted any evidence that at the time of [his] wife's birth in 1983, her parents had not acquired a residence in India" within the meaning of the INA and the related regulations. *Id.* According to USCIS, Plaintiff had not shown that his

wife's parents "were visiting temporarily or were stationed in India in connection with business or profession and under orders or instructions of an employer, principal, or superior authority of the French government." *Id.*

On October 18, 2018, Plaintiff filed a "Notice of Appeal or Motion." CAR at 8. Plaintiff checked a box indicating that he was filing a "motion to reopen and a motion to reconsider the decision." *Id.* He did not check any of the boxes indicating that he was filing an administrative "appeal." *Id.* He explained that he was providing "new facts" and documents and requested "reconsideration of the prior decision." CAR 21. In support of his motion, he provided, among other documents, copies of his in-laws' French passports, his father-in-law's birth certificate, and a "Non-Residence Affidavit" from his father-in-law attesting that both he and his wife were French nationals and that he had been "stationed in India in connection with his profession." CAR 28–29. On November 26, 2018, USCIS denied this motion on the ground that Plaintiff had failed to file the motion "within 30 days of the decision that the motion seeks to reopen." CAR 6 (quoting 8 C.F.R. § 103.5); CAR 7.

On April 19, 2019, Plaintiff filed the complaint in this Court, alleging that USCIS's determination that Plaintiff's visa could not be charged to France via his wife violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Dkt. 1 at 5–7 (Compl. ¶¶ 36–49). The parties have now cross-moved for summary judgment. Dkt. 10; Dkt. 11.

## II.  ANALYSIS

As an initial matter, the Court must decide what administrative decision is before the Court for review. Plaintiff asserts that he seeks to challenge the decision of the Administrative Appeals Office ("AAO") within USCIS. *See* Dkt. 10-1 at 1. But, as USCIS notes, no such decision is in the administrative record, nor is there any reason to believe that the AAO was

6

asked to—or did—issue a decision with respect to Plaintiff's application. Three decisions are in the record: the July 9, 2018 decision of the USCIS Field Office Director denying Plaintiff's Application to Register Permanent Residence or Adjust Status (Form I-485) ("I-485 Application"), CAR 105–08; the August 20, 2018 decision of that same official denying Plaintiff's motion to reopen and motion to reconsider the July 9, 2018 decision, CAR 25–26; and the November 26, 2018 decision of that same official denying Plaintiff's second motion to reopen and motion to reconsider the agency's decision, which was denied as untimely, CAR 6–7. *See* Dkt. 11-1 at 19–20. Because Plaintiff does not challenge the agency's conclusion that his second motion to reopen and motion to reconsider was untimely, neither that decision nor the evidence that Plaintiff submitted along with his second motion is properly before the Court.

The Court will, accordingly, consider only the July 9, 2018 and August 20, 2018 decisions and will limit it review to the evidence that Plaintiff submitted—and that was before USCIS—with respect to those decisions. Any other evidence, including evidence that Plaintiff submitted in support of his untimely second motion to reopen, is outside the administrative record with respect to the challenged decisions and thus not properly before the Court. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) ("[R]eview is to be based on the full administrative record that was before the [agency] at the time [it] made [its] decision."); *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573 (2019) ("[A] court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record."); *Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984) (instructing that courts should consider "neither more nor less information than did the agency when it made its decision").

Plaintiff argues that USCIS's denial of his application for adjustment of status was arbitrary and capricious because the agency failed to consider evidence showing that (1) his mother-in-law was not born in India and (2) that his wife's parents did not "reside" in India at the time of her birth within the meaning of 22 C.F.R. § 42.12(e).  *See* Dkt. 10-1 at 7–10.  With one exception, however, the evidence that he cites was not before the agency when it rendered the July 9, 2018 and August 20, 2018 decisions.  *See* Dkt. 10-1 at 7 (citing CAR 28–29); *id.* at 9–10 (citing CAR 17, 29); *see also* Dkt. 9-1 (index describing which material was submitted in support of each application).  Plaintiff, instead, submitted that evidence only along with his untimely second motion to reopen.  As such, it was not before the agency and is not properly before this Court.

The one document that Plaintiff cites that was before the agency when it rendered the decisions properly subject to the pending challenge is a certification from the Government of Pondicherry regarding Plaintiff's father-in-law's employment as a "Trained Graduate Teacher, Govt. Girls Middle School" in Pondicherry at the time of Plaintiff's wife's birth in Pondicherry.  Dkt. 10-1 at 8 (citing CAR 61).  According to Plaintiff, this document—along with the documents that are outside the relevant administrative record—shows that his in-laws "did not have residence in India in 1983, when [his wife] was born, and [that] they were only there because of [his] wife's dad's job."  Dkt. 10-1 at 8.  The document, in Plaintiff's view, shows that his wife's parents were "stationed" in Pondicherry "in connection with the business or profession and under orders or instructions of an employer, principal, or superior authority foreign to such foreign state," 22 C.F.R. § 42.12(e), and that his visa, through cross-chargeability, is properly chargeable to France, not India, *see* Dkt. 10-1 at 8.

The problem for Plaintiff is that this certification states that his father-in-law's employer was the Government of Pondicherry.  *See* CAR 61.  The document is captioned: "GOVERNMENT OF PUDUCHERRY, OFFICE OF THE DY. DIRECTOR OF EDUCATION (WOMEN)."  *Id.*  It then "certif[ies] . . . the service of" Plaintiff's father-in-law "under the direction of the Deputy Director of Education (Women), Puducherry."  *Id*.  And, the document is signed, under official seal, by the "Deputy Director of Education (Women)."  *Id.*  The document lends no support to the contention the Plaintiff's father-in-law worked at the direction of the French government at the time Plaintiff's wife was born in Pondicherry; if anything, it suggests that he worked for the government of Pondicherry at that time.

This matters because Plaintiff argues that USCIS should have concluded that his wife was "born" in France because, at the time of her birth, her parents resided in India only because her father was "stationed there in connection with the business or profession or under the orders or instructions of employer, principal, or superior authority foreign to such foreign state."  22 C.F.R. § 42.12(e).  That exception is unavailable, however, where the parents of the alien served in the foreign state "under the orders or instructions of . . . such foreign state," *id.*, and that is precisely what the evidence that Plaintiff cites appears to show.  It is, of course, possible that Plaintiff's father-in-law was working at the direction of the French government in 1983, when Plaintiff's wife was born.  Nothing in the relevant administrative record, however, supports that conclusion, and the Court's role is limited to assessing whether the agency reached a reasoned decision supported by the evidence that was before it.  *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (holding that an "agency must explain the evidence that is available[] and must offer a rational connection between the facts found and choice it made").  Here, USCIS concluded that Plaintiff had failed to "submit[]

evidence that [he] qualif[ied] for the exception as outlined in 22 C.F.R. § 42.12(e) and[,] as a result, [he had] not demonstrated that [he was] eligible to use France as [his] country of cross chargeability." CAR 26. That conclusion was well-supported by the record that was before the agency.

In his briefs, Plaintiff argues that his in-laws did not have "a residence" in India at the time his wife was born. *See* Dkt. 10-1 at 8. It is unclear whether Plaintiff intends simply to restate his contention that, under 22 C.F.R. § 4.12(e), a parent is not deemed to reside in a foreign state if "stationed there . . . under orders or instructions of an employer . . . foreign to such foreign state," or whether he intends to suggest that Plaintiff's in-laws always planned to move to France someday and, therefore, lacked the mental state necessary to establish legal "residence." If he means the latter, his argument is too little, too late. Even to this day, he offers no evidence that either of his in-laws lived anywhere other than Pondicherry before his wife's birth—or for many years after her birth. What little evidence he does offer, moreover, was submitted only with his second motion to reopen, *see* CAR 28–29, and, therefore, is not part of the record properly before the Court.

Plaintiff offered only the most cursory reference in his first motion for reconsideration to the argument he now seeks to advance. There, he argued that his wife did not "have any residence status with India and did[] [not] hold [an] Indian passport." CAR 97. Similarly, he noted that her father was born in Pondicherry while it was under French control and worked as "a French teacher and was working for Director of Education (women)." CAR 97. These assertions arguably foreshadowed the argument that is he (possibly) making now—that his wife's parents were not "residents" at the time of her birth. But even assuming that these assertions actually raised the argument that Plaintiff's in-laws lacked a sufficient connection to

India to have established legal residence, he offered no evidence with his motion that could have plausibly supported that contention. His father-in-law's employment certificate, for example, shows that he was employed at the same school in Pondicherry for 33 years, starting in 1973. CAR 61. That evidence hardly supports a claim that either of Plaintiff's in-laws was merely "visiting temporarily," 22 C.F.R. § 42.12(e), or that Pondicherry was not their "general place of abode . . . without regard to intent" at the time Plaintiff's wife was born, 8 U.S.C. § 1102(33). Nor does the fact that Plaintiff's mother-in-law possessed a French passport change anything. CAR 60. There is no inconsistency between residing for decades in India, as Plaintiff's in-laws did, and possessing a foreign passport for all or some of that time.

The Court, accordingly, concludes that USCIS did not act arbitrarily or capriciously, in violation of the APA, when it denied Plaintiff's first motion to reopen and motion for reconsideration. Because that was the controlling agency decision for present purposes, Plaintiff is not entitled to judicial relief.

\* \* \*

USCIS offered an alternative rationale, which the Court will briefly address because it further bolstered the agency's decision and is also well-supported by the record that was before the agency. Although in its original decision, USCIS concluded that both of Plaintiff's in-laws were born in France, CAR 107, the agency did not go that far—nor did it need to go that far—in its August 20, 2018 decision, *see* CAR 50 ("A review of the record finds that you have failed to establish that neither of your wife's parents were born in India[.]"). Even if Plaintiff's father-in-law was not born in India, because, at the time he was born, Pondicherry was under French control, by the time Plaintiff's mother-in-law was born in 1966, "India [had] regained control over Pondicherry." CAR 26; Dkt. 10-1 at 4. Plaintiff asserts that his mother-in-law was never a

11

citizen of India, but that does not undercut USCIS's conclusion that she was, in fact, "born" in India. Absent indications otherwise, the "words of . . . regulations must be given their 'ordinary, contemporary common meaning.," *FTC v. Tarriff*, 584 F.3d 1088, 1090 (D.C. Cir. 2009) (quoting *Williams v. Taylor*, 529 U.S. 420, 431 (2000)), and Plaintiff provides no basis to disregard the plain meaning of the phrase a "foreign state in which neither parent was born," 22 C.F.R. § 42.12(e).

In any event, even if this argument were convincing, Plaintiff did not raise it with USCIS in a timely manner, *see* CAR 97 (explaining the basis for his motion for reconsideration and making no mention of his mother-in-law's place of birth), and it is too late for him to raise the argument for first time before this Court. *See Coburn v. McHugh*, 679 F.3d 924, 929 (D.C. Cir. 2012) (explaining the "general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice" (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952)); *see also CSX Transp., Inc. v. Surface Transp. Bd.*, 584 F.3d 1076, 1079 (D.C. Cir. 2009) (describing the "well-established doctrine of issue waiver," which "permits courts to decline to hear arguments not raised before the agency where the party had notice of the issue").

## CONCLUSION

For the foregoing reasons, the Court will **DENY** Plaintiff's motion for summary judgment, Dkt. 10, and **GRANT** Defendant's motion for summary judgment, Dkt. 11. A separate order will issue.

                                               /s/ Randolph D. Moss
                                               RANDOLPH D. MOSS
                                               United States District Judge

Date: May 31, 2020